The Honorable Percy Malone State Representative 518 Clay Street Arkadelphia, AR 71923-6024
Dear Representative Malone:
You have requested an Attorney General's opinion in response to the following questions:
 (1) Is it legal for a city to subsidize its water rates with its electricity rates?
 (2) Why are cities not required by law to take bids for the city's electricity, given that wholesale electricity is currently deregulated?
 (3) If cities were required to take bids when buying wholesale electricity, why can they not re-sell it to their citizens at a lower rate?
RESPONSE
Question 1 — Is it legal for a city to subsidize its water rates with itselectricity rates?
It is my opinion that although state law does not explicitly prohibit the subsidization of water rates with electric rates, such a subsidization is impermissible if it is necessary in order for the water rates to meet the requirements of A.C.A. § 14-234-214 (discussed below). However, if the requirements of that statute are not at issue, it is my opinion that the subsidization would not, on its face, be impermissible under state law, although it could be challenged on specific factual grounds.
All cities, whether they operate their water systems through a commission (see A.C.A. § 14-234-302; A.C.A. § 14-201-104) or not, are empowered by A.C.A. § 14-234-214 to establish the rates to be charged for water provided by the city. Those rates must meet certain requirements, which are set forth in A.C.A. § 14-234-214, as follows:
(b) The rates to be charged by the municipality must be adequate to:
 (1) Pay the principal of and interest on all revenue bonds and revenue promissory notes as they severally mature;
 (2) Make such payments into a revenue bond sinking fund as may be required by ordinance or trust indenture;
 (3) Provide an adequate depreciation fund and to provide the operating authority's estimated cost of operating and maintaining the waterworks system.
A.C.A. § 14-234-214(b).
The language of A.C.A. § 14-234-214 is clear and unambiguous. Water rates must be sufficient to meet the listed requirements. I am required to interpret this statutory language "just as it reads." Leathers v.Cotton, 332 Ark. 49, 961 S.W.2d 32 (1998). I therefore conclude that the water rates themselves, without help from subsidization, must be adequate to meet the three requirements listed in the statute.
However, a situation could exist in which these three requirements are not an issue. For example, a given city could have no outstanding bonds or notes to be paid, as required by Section (b)(1). Similarly, a city could have no ordinance or trust indenture requiring payments into a revenue sinking fund, as referenced in Section (b)(2). Finally, a city could conceivably already have an adequate depreciation fund and can, even without the subsidy, provide for the cost of operating and maintaining the waterworks system, as referenced in Section (b)(3). If a situation should exist in which none of the three listed requirements is an issue, it is my opinion that state law does not prohibit a city from subsidizing its water rates with its electric rates.
One reason that I am able to reach this conclusion is that state law does not create comparable requirements with regard to electric rates. Otherwise, it could clearly be argued that the electric rates are higher than necessary to meet the requirements. However, because there are no such requirements with regard to electric rates, cities have wider leeway in establishing those rates. The only requirement that is explicitly stated in any of the statutes authorizing cities to establish rates for the provision of electric service is a requirement that the rates constitute "just compensation." See A.C.A. § 14-54-701(a)(2).
An argument could, of course, be made that an electric rate that is sufficient both to compensate the city for electricity and to subsidize water rates does not constitute "just compensation." A determination of whether a particular rate is "just" is a determination of fact that must be made on the basis of a consideration of all the relevant circumstances. A court must make such a determination.
For this reason, I cannot opine conclusively as to whether the subsidization of water rates with electric rates would always and in all circumstances be regarded as either legal or illegal. The answer will turn largely on the facts of each case, as impacted by the provisions of law discussed above.
Question 2 — Why are cities not required by law to take bids for thecity's electricity, given that wholesale electricity is currentlyderegulated?
It is my opinion that wholesale electricity that is purchased by a city and is available on a competitive market may, in fact, fall within the types of items for which the city is normally required to obtain bids, pursuant to A.C.A. § 14-58-303.[1] However, even if that is the case, the city is authorized to waive the requirement of bidding.
A.C.A. § 14-58-303 states:
14-58-303. Purchases and contracts generally.
 (a) In a city of the first class, the mayor or his duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.
 (b)(1) The municipal governing body shall provide, by ordinance, the procedure for making all purchases which do not exceed the sum of ten thousand dollars ($10,000).
 (2)(A)(i) Where the amount of expenditure for any purpose or contract exceeds the sum of ten thousand dollars ($10,000), the mayor or his duly authorized representative shall invite competitive bidding thereon by legal advertisement in any local newspaper.
 (ii) Bids received pursuant to the advertisement shall be opened and read on the date set for receiving the bids in the presence of the mayor or his duly authorized representative.
 (iii) The mayor or his duly authorized representative shall have exclusive power to award the bid to the lowest responsible bidder, but may reject any and all bids received.
 (B) The governing body, by ordinance, may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical.
A.C.A. § 14-58-303.
The above-quoted language describing items for which bids must be obtained is certainly broad enough to encompass wholesale electricity that is available on a competitive market. Nevertheless, even if wholesale electricity is such an item, the city can circumvent the bidding requirement, pursuant to Section (b)(2)(B), in "exceptional situations" if it deems the procedure not to be feasible or practical. The city can also avoid the bidding requirement, pursuant to Section (b)(1), if the purchase in question is for less than $10,000.00 and the city has provided that such purchases do not require bidding.
It should be noted that these means of avoiding the bidding procedure are available to the city in connection with the purchase of any item for which bidding is normally required. Accordingly, the mere fact that wholesale electricity has been deregulated and may be available for purchase on a competitive market does not conclusively determine that the city is required to take bids for it.
Question 3 — If cities were required to take bids when buying wholesaleelectricity, why can they not re-sell it to their citizens at a lowerrate?
I am unable to opine definitively in response to this question, because it is unclear what is being asked.
What is clear, however, is that under state law, cities are empowered to establish rates for the electricity that they provide to their citizens, and, as discussed in response to Question 1, they are given wide leeway in doing so. As also previously discussed, a variety of factors can impact the reasonableness of the electricity rates that cities establish. Moreover, under A.C.A. § 14-58-303(b)(2)(A)(iii), an award to the lowest bidder is not mandatory (see also Op. Att'y Gen. No. 99-067), but all bids can be rejected. For this reason, I am unable to state, as a general matter, that a required bidding procedure would necessarily result in lower electricity rates.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh
[1] I do not address herein the question of whether the market for wholesale electricity is, in fact, a truly competitive market, and this opinion should not be interpreted as expressing a view on that issue.